WESTERMAN BALL EDERER MILLER
   & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
Thomas A. Draghi, Esq.
Jeffrey A. Miller, Esq.

*Proposed Counsel for Queens Plaza Development, LLC*
*Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

QUEENS PLAZA DEVELOPMENT, LLC,

                          Debtor.
---------------------------------------------------------X

Chapter 11
Case No.: 10-77035 (___)

## AFFIDAVIT IN COMPLIANCE WITH
## RULE 1007-4 OF THE LOCAL BANKRUPTCY RULES

STATE OF NEW YORK     )
                                 ) ss:
COUNTY OF WESTCHESTER  )

       YORAM SHEMESH being duly sworn, deposes and says:

       1.     I am a managing member of an entity that is a managing members of Queens Plaza Group, LLC ("Group"), which in turn is a managing member of Queens Plaza Holdings, LLC ("Holdings"), which is the sole manager and member of Queens Plaza Development, LLC, a Delaware limited liability company and the debtor and debtor-in-possession herein ("Debtor"). I have knowledge of and am familiar with the business, financial affairs, and books and records of the Debtor. With respect to certain financial information set forth herein, I have relied on information contained in the Debtor's books and records.

2. I submit this Affidavit (the "Affidavit") in support of the Debtor's voluntary petition (the "Petition") for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C.§§ 101, *et. sec.* (as amended, the "Bankruptcy Code"), and pursuant to Rule 1007-4 of the Local Rules of Bankruptcy Procedure for the Eastern District of New York (the "EDNY LBR").

3. Except as otherwise noted herein, all facts set forth in this Affidavit are based upon personal knowledge, review of relevant documents, or opinions based upon my experience and knowledge of the Debtor's operations and financial condition. If called upon to testify, I could and would testify competently to the facts set forth in this Affidavit.

4. Unless otherwise indicated, the financial information set forth in this affidavit is unaudited.

**Background**

5. On September 8, 2010 (the "Filing Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. No trustee, examiner or committee of unsecured creditors has as yet been appointed, and the Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. The Debtor is a Delaware limited liability company that maintains a principal place of business in Garden City, New York. The Debtor's books and records and senior management are also located in Garden City, New York. The Debtor's business consists of owning, developing and otherwise dealing with that certain real property located at 29-37 41st Avenue, Long Island City, New York (the "Property").

7. The Debtor's sole member and manager is Holdings, a Delaware limited liability company. The two members of Holdings are Group and 29-37 II, LLC. I am a managing member of any entity that is a managing member of Group. Through these entities I am involved in making all of the major decisions for the Debtor and am authorized to execute and file, on behalf of the Debtor, documents in this case.

**Events Leading To Bankruptcy Filing**

    **A.**    **The Loan Transaction**

8. The Debtor was formed in or about April 2007, for purposes of, among other things, acquiring and developing the Property. The Debtor financed the purchase of the Property with a first mortgage loan from U.S. Bank National Association, a national banking association (the "Lender") in the total original principal amount of approximately $17,240,000 as evidenced by, among other documents, (a) that certain Consolidated, Amended and Restated Note, dated as of April 19, 2007 (the "Initial Note") in the principal amount of $14,690,000; (b) that certain Project Loan Note, dated as of April 19, 2007 (the "Project Note" and, together with the Initial Note, the "Notes") in the principal amount of $2,550,000, or so much of such sum advanced by Lender; (c) that certain Loan Agreement, dated as of April 19, 2007; (d) that certain Consolidated, Amended and Restated Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated April 19, 2007, which secures the Initial Note and was recorded on June 4, 2007 in the Office of the City Register, New York County (the "Register's Office") under CRFN 2007000287610; and (e) that certain Project Loan Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing also dated April 19, 2007, which secures the Project Note and was recorded on June 4, 2007 in the Register's Office under CRFN 2007000287611 (collectively with the other documents

executed and delivered by the Debtor in connection with the loan transaction, the "Loan Documents"). Upon information and belief, the Lender asserts that the aggregate amount it is owed under the Notes as of the Filing Date is $15,066,181.93, exclusive of legal expenses, costs and fees.

9. The initial maturity date of both the Initial Note and the Project Note was April 19, 2008. Pursuant to the Loan Agreement, the Debtor had a right to extend the maturity date to October 31, 2008 (the "Maturity Date"), which it exercised.

10. The Debtor failed to repay the Notes on the Maturity Date.

**B.  Events After the Loan Transaction**

11. After the Debtor purchased the Property, myself and other investors, through the Debtor's affiliates, invested millions of dollars to cover pre-development costs and expenses related to the proposed development of the Property. These funds were in addition to the loans received from the Lender. The Debtor had planned on constructing a hotel on the Property and the funds we invested, together with the proceeds from the Project Note, were used for, among other things, demolishing a pre-existing building on the Property, preparation of full plans for the proposed hotel, and other pre-construction costs and expenses related to the project.

12. The loan received from the Lender was a short-term loan that the Debtor had intended on replacing with longer term financing keyed to the construction and development of the hotel on the Property. Following the acquisition, the Debtor expended a significant amount of time and effort seeking financing for the hotel project. Unfortunately, shortly after the acquisition, there was an economic downturn that resulted in the Debtor not being able to secure the financing it needed for the project. The Debtor also explored the possibility of bringing in a joint venture partner, without success.

4

13. On or about April 24, 2009, the Lender commenced an action to enforce the Notes against the Debtor and its guarantors in the Supreme Court of the State of New York, County of New York (the "State Court), captioned *U.S. Bank National Association, a national banking association v. Queens Plaza Development LLC, et al.,* Index No. 601254/09 (Sup. Ct. New York County) (the "State Court Action").

14. In or about June, 2010, the State Court granted the Lender's motion for summary judgment in the State Court Action. Thereafter, certain of the guarantors reached a settlement with the Lender that resulted in the State Court Action being discontinued as against the Debtor and the settling guarantors.

15. The Debtor's bankruptcy filing was precipitated by, among other things, the current economic recession which resulted in the Debtor not being able to secure the financing it needed for the hotel project on the Property. There are no operations at the Property. The Debtor seeks the breathing spell of the bankruptcy process in order to, *inter alia*, avoid any further state court litigation with respect to the Property and to facilitate a sale of the Property that will maximize the value of the Debtor's assets for the benefit of its creditors.

**Compliance with Rule 1007-4 of the Local Bankruptcy Rules**

**E.D.N.Y. LBR 1007-4(a)(i) and (ii)**

16. A description of the nature of Debtor's business operations and the circumstances leading up to the Debtor's filing under Chapter 11 is contained herein at the section entitled "Background". The Debtor is not a small business debtor within the meaning of Bankruptcy Code §101(51D).

**E.D.N.Y. LBR 1007-4(a)(iii)**

17. This case was not originally commenced as a Chapter 7, Chapter 12 or Chapter 13 case and no trustee has been appointed in the case.

**E.D.N.Y. LBR 1007-4(a)(iv)**

18. To the best of my knowledge, no unofficial creditor or other committees were formed in connection with the Debtor's Chapter 11 case prior to its commencement.

**E.D.N.Y. LBR 1007-4(a)(v)**

19. A list containing the names, addresses and the amounts of the claims of the Debtor's twenty (20) largest known non-insider, general, unsecured creditors, was filed with the Debtor's Petition and designates which claims are disputed, contingent or unliquidated. To the best of my knowledge, the list also designates whether any of the claims listed on that schedule are partially secured, which will depend on the priority of any such liens in relation to each other and the value to be realized from the sale of the Property.

**E.D.N.Y. LBR 1007-4(a)(vi)**

20. A list of the five (5) largest alleged secured creditors of the Debtor, the amount of their claims, an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed was filed with the Petition. These claims include the following: (a) the Lender, with a claim of approximately $15 Million (based on the Notes); (b) Centra/CRI Architecture LLC, with a claim of approximately $350,000 (based on a mechanic's lien filed on April 2, 2009); (c) MG Engineering P.C., with a claim of approximately $125,000 (based on a mechanic's lien filed on March 10, 2009); (d) The Bank of New York Mellon, as Collateral Agent, with a claim in the amount of approximately $67,000 (based on a tax lien purchased in August, 2010 from the City of

New York, Department of Finance); and (e) the City of New York, Department of Finance, with an unliquidated claim in the amount of approximately $22,000 (based on alleged outstanding taxes and an illuminated sign fee). The alleged liens are secured to the extent of the value of such creditor's interest in the Debtor's interest in the Property. Accordingly, whether a particular alleged secured claim is secured will depend upon the priority of its alleged lien in relation to the holders of other alleged secured liens and the value of the Property (which is estimated to be $11 Million by the Debtor, with the actual value to be determined pursuant to a sale of the Property).

### E.D.N.Y. LBR 1007-4(a)(vii)

21. A summary of the Debtor's assets and liabilities on an unaudited basis is included in the Petition.

### E.D.N.Y. LBR 1007-4(a)(viii)

22. To the best of my knowledge, there are no classes of shares of stock, debentures, or other securities of the Debtor that are publicly held.

### E.D.N.Y. LBR 1007-4(a)(ix)

23. To the best of my knowledge, there is no property of the Debtor in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

### E.D.N.Y. LBR 1007-4(a)(x)

24. The Debtor operates from offices leased by an affiliate of the Debtor, located at 100 Quentin Roosevelt Boulevard, Suite 303, Garden City, New York.

**E.D.N.Y. LBR 1007-4(a)(xii)**

25. The Debtor's books and records are maintained at its principal place of business at 100 Quentin Roosevelt Boulevard, Suite 303, Garden City, New York. The Debtor owns the Property and holds no assets outside the territorial limits of the United States.

26. The Debtor's books and records and principal place of business are located in Garden City, New York.

**E.D.N.Y. LBR 1007-4(a)(xii)**

27. A list identifying each action (pending or threatened) against the Debtor or its properties where a judgment or a seizure of its property may be imminent was included in the Debtor's Petition.

**E.D.N.Y. LBR 1007-4(a)(xiii)**

28. Through the above described affiliated entities, I am involved in the senior management of the Debtor, as is Moshe Feller who, upon information and belief, is the sole member of 29-37 II, LLC. We have been involved with making the business decisions of the Debtor since its formation in or about April, 2007.

**E.D.N.Y. LBR 1007-4(a)(xiv)**

29. The Debtor has no employees or weekly payroll.

**E.D.N.Y. LBR 1007-4(a)(xv)**

30. The Debtor is a Delaware limited liability company that does not propose making any payments for services rendered by its member or to any other person in management for the thirty (30) day period following the commencement of its Chapter 11 case. The Debtor has retained no financial or business consultants.

### E.D.N.Y. LBR 1007-4(a)(xvi)

31. The Debtor will not have any cash receipts and disbursements, net cash gain or loss, or obligations and receivables expected to accrue but remaining unpaid, other than professional fees for the thirty (30) day period following the filing of the Chapter 11 Petition.

### Conclusion

32. The Debtor filed the Petition to maximize and preserve the value of its assets (*i.e.*, the Property) for the benefit of the Debtor, its creditors, and parties in interest.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

                                      */s/ Yoram Shemesh*
                                      Yoram Shemesh

Sworn to before me this
8th day of September, 2010

__*/s/ Joseph Archina*__
NOTARY PUBLIC, State of New York
No. 01AR6034577
Qualified in Westchester County
Commission Expires 12/13/2013